557 A.2d 1137

Sara B. Stein, Appellant *v.* City of Philadelphia, Appellee.

Argued March 6, 1989, before Judges DOYLE and SMITH (P.), and Senior Judge KALISH, sitting as a panel of three.

*Joseph V. Restifo,* for appellant.

*Laureto A. Farinas,* for appellee.

OPINION BY SENIOR JUDGE KALISH, April 17, 1989:

Sara Stein (appellant) appeals from an order and judgment of the Court of Common Pleas of Philadelphia County, sustaining the preliminary objections of the City of Philadelphia (City) and dismissing appellant's petition for the appointment of a Board of View. We reverse and remand.

It was stipulated between the parties that appellant owned a row house at 4412 Parrish Street in the City, and that in 1978, properties 4410 and 4414 were demolished by a contractor for the City because these properties were deemed by the City to be "imminently dangerous." Appellant's property was not so deemed by the City and, in fact, was occupied by tenants.

Appellant had filed an action in trespass and assumpsit which is still pending. Subsequently, appellant filed the action now being considered. In this action, she alleged that as a result of the demolition by the City of properties 4410 and 4414, her property at 4412 suffered substantial structural damage, including *inter alia,* the separation of the front wall from the side walls, the weakening of the foundation, and damage to the roof. Appellant alleges that these injuries to her property have substantially deprived her of the beneficial use of her property so that it is uninhabitable, and cannot be used as a rental property for any purpose. She alleges a "taking" of her property and seeks money damages.

Following argument on the City's preliminary objections in the nature of a demurrer, the trial judge sustained

the demurrer. In the course of his opinion the trial judge stated, "a condemnee must show that the damages sustained by such condemnee are the 'unavoidable consequences' of an exercise of the power of eminent domain. . . . Here, the plaintiff's [appellant's] property was damaged when the City exercised its *police power* to protect the public and had the adjacent, 'imminently dangerous' buildings demolished. . . ."

Our scope of review is limited to determining whether there is competent evidence in the record to support the findings made and whether an error of law was committed. *Deets v. Mountaintop Area Joint Sanitary Authority,* 84 Pa. Commonwealth Ct. 300, 479 A.2d 49 (1984); *Petition of Ramsey,* 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977).

A de facto or inverse condemnation, as opposed to a de jure condemnation, involves a situation where a governmental agency, by its conduct, may or may not physically invade property. The owner contends that such conduct impinges on the beneficial use of his property, resulting in a diminution of value for which he seeks compensation.

The basis for the claim is the Fifth Amendment to the United States Constitution, forbidding property to be taken for a public use. The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104 (1978). In Pennsylvania, we recognize these takings under section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e).

While recognizing the basis for these claims, the question of what constitutes a "taking" for the purposes of the Fifth Amendment has proved to be a problem. Much of the problem was caused by the conceptual difference

between a taking by the exercise of the power of eminent domain and an interference with the beneficial use of the property by the exercise of the police power. The United States Supreme Court early recognized that there is no real qualitative difference in a Fifth Amendment taking where the taking is by eminent domain rather than by the exercise of the police power. As far as the property owner is concerned, there is no real difference as to whether he is deprived of the beneficial use of his property by the exercise of the power of eminent domain or by the police power. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393 (1922).

Justice HOLMES indicated that the determination of a "taking" in de facto taking jurisprudence is not capable of a set formula, but rather is one of degree and cannot be disposed of by general propositions.

The United States Supreme Court has continued to recognize this and has stated that whether governmental action will constitute a taking depends largely upon the particular circumstances of the case. The court has identified several factors that have particular significance which focus on the *character* of the governmental action, rather than whether the action was in eminent domain or the exercise of the police power. The court has said that a taking may more readily be found when the interference with property can be characterized as a physical invasion by the government, rather than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. Zoning laws are a classic example of this kind of interference. *Keystone Bituminous Coal Association v. De Benedictis,* 480 U.S. 470, n.18 (1987); *Penn Central Transportation Co.,* 438 U.S. 104 (1922).

In this connection, Pennsylvania has steadfastly held that in zoning matters there is a real need to preserve

some degree of flexibility and to prevent the tremendous burden and expense imposed on governmental agencies in a de facto taking. The only remedy of the owner would be to have the offending statute declared invalid. *Gary D. Reihart, Inc. v. Township of Carroll*, 487 Pa. 461, 409 A.2d 1167 (1979); *Reilly v. Department of Environmental Resources*, 37 Pa. Commonwealth Ct. 608, 391 A.2d 56 (1978).

However, in other matters, where there has been a physical invasion of the property in the exercise of the police power, we have permitted a recovery in damages in a de facto taking. For example, highway route barriers may become so circuitous as to represent an unreasonable and permanent interference with access. *McCrady Case*, 399 Pa. 586, 160 A.2d 715 (1960); *Commerce Land Corporation v. Department of Transportation*, 25 Pa. Commonwealth Ct. 561, 361 A.2d 469 (1976). Likewise, where a governmental agency in the exercise of its police power operated and controlled the traffic pattern of airplanes entering and leaving the airport, it was held that under certain conditions, this conduct can amount to a taking. *Griggs v. Allegheny County*, 369 U.S. 84 (1962); *City of Philadelphia v. Keyser*, 45 Pa. Commonwealth Ct. 271, 407 A.2d 55 (1979). This court has held that the facts, as found by the trial court, form a basis for the conclusion that a de facto taking has occurred. *Petition of Ramsey*, 20 Pa. Commonwealth Ct. 207, 342 A.2d 124 (1975).

A governmental agency has not "taken" anything when it asserts its police power to abate a nuisance, and need not provide compensation when it destroys the value of the property by abating the nuisance. *Keystone*. In the instant case, however, appellant's property was not deemed to be a nuisance or imminently dangerous. While the governmental agency could abate the nuisance created by the other properties without monetary dam-

ages, it cannot abate the injury so as to damage the property of another. There was no justification for such conduct and the agency may be responsible for damages resulting therefrom.

A preliminary objection in a de facto taking case serves a broader purpose than the ordinary preliminary objections. The trial court must determine first whether, as a matter of law, the averments of the petition for the appointment of viewers, taken as true, in addition to any stipulated facts, are sufficient to state a cause of action for a de facto taking. If not, the preliminary objections must be sustained and the petition dismissed or allowed to be amended. If the averments, taken as true, *might* establish a de facto taking, the trial court must take evidence by depositions, or otherwise, *so that a judicial determination might be made. Jacobs v. Nether Providence Township*, 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972). In *Petition of Ramsey,* a de facto eminent domain proceeding involving an overflight of airplanes at an airport, the case was remanded to the trial court for an evidentiary hearing, so that a judicial determination might be made as to whether the owners, based upon the evidence, established a de facto taking of their property as a matter of law.

In the instant case, the trial court concluded, as a matter of law, that since the damages resulted from the exercise of the police power rather than in eminent domain, there could be no redress in this proceeding and dismissed the petition for the appointment of viewers. This expression is not consistent with the state of the jurisprudence in de facto "takings."

Since the property owner made an election to seek redress in an eminent domain proceeding, he is deemed to have waived the trespass action. *Deets*. Furthermore, this is not the conduct of an independent contractor

acting without the authority of the agency clothed with the power of eminent domain, where we have held that the property owner's sole remedy is in trespass against the offending contractors. *Espy v. Butler Area Sewer Authority,* 63 Pa. Commonwealth Ct. 95, 437 A.2d 1269 (1981).

Accordingly, we reverse, and remand this matter to the trial court to make findings and a determination as to whether the owner established a de facto taking as a matter of law.

## ORDER

NOW, April 17, 1989, the order of the Philadelphia County Court of Common Pleas, No. 1904 of July Term, 1983, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

---

CONCURRING OPINION BY JUDGE DOYLE:

I concur in the result reached by the majority and write separately only to explain that I concur because the appellant asserted in her Petition for the Appointment of a Board of Viewers that the *condemnor,* the City of Philadelphia, "demolished the buildings adjoining 4412 Parrish Street" and that as the result of that demolition her property was rendered uninhabitable and its use "as a rental property or for any purpose" was destroyed because of major structural damage such as the separation of the front wall from both side walls. Of course, for the purpose of a demurrer all well pled factual allegations in the petition must be taken as true. *Zemprelli v. Thornburgh,* 73 Pa. Commonwealth Ct. 101, 457 A.2d 1326 (1983).

*Deets v. Mountaintop Area Joint Sanitary Authority,* 84 Pa. Commonwealth Ct. 300, 479 A.2d 49 (1984), is still good law, and in *Deets,* which involved the negligence of

the Authority's independent contractor when it laid a sewer line outside the Authority's right-of-way, we held:

> [W]here the deprivation of the use and enjoyment of property is the result of the negligent actions of an independent contractor acting without the authority or direction of an entity clothed with the power of eminent domain, we have held the property owner's sole remedy is an action in trespass against the offending contractors. ... It is only where a landowner's damages are the result of the actions of an entity clothed with the power of eminent domain that the landowner may seek compensation under the Code. Where the actual intrusion is the result of the actions of independent contractors, the landowner must prove that the contractor's actions were either authorized or directed by the entity clothed with eminent domain power to proceed under the Code. Where the contractor deviates from a previously granted right-of-way, the landowner must prove the contractor's deviation was either authorized or directed by the entity with eminent domain power. Here, the appellants failed to meet that burden.

*Id.* at 304, 479 A.2d at 51-52 (citations omitted).

If the condemnor or its contractor—if the contractor acted with the explicit authority of the condemnor—was directly responsible for the damage to the appellant's property, then the criteria which our Supreme Court set forth in *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974), should be applied by the trial court. Otherwise, the appellant's remedy lies against those whose negligent conduct caused appellant's loss.