Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Harrisburg Coca-Cola Bottling Company, Inc., Appellee.

Argued February 8, 1980, before Judges ROGERS, MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Charles L. Buechal, Jr.*, with him *Mark S. Silver*, Assistant Attorneys General, *Robert W. Cunliffe*, Deputy Attorney General, and *Edward G. Biester, Jr.*, Attorney General, for appellant.

*Clyde W. McIntyre*, with him, *Delano M. Lantz, McNees, Wallace and Nurick*, for appellee.

OPINION BY JUDGE WILLIAMS, JR., May 20, 1980:

This litigation commenced when the instant appellee, Harrisburg Coca-Cola Bottling Company, Inc. (Coca Cola), filed in the Court of Common Pleas of Cumberland County a petition for the appointment of viewers under Section 502(e) of the Eminent Domain

Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e). The appellant, Pennsylvania Department of Transportation (Department), appeals from the order of that lower court striking its supplemental preliminary objections to the petition.

The petition for viewers, filed on May 24, 1977, alleged that the Department had committed a de facto taking relative to an approximately 10 acre tract of land owned by Coca Cola. Coca Cola also claimed for consequential damage under Section 612 of the Code, which imposes liability for damage to property resulting from a change in the grade of an abutting road or highway. 26 P.S. §1-612. The petition contended that the Department, in constructing a highway interchange ramp in 1970 through 1972, had changed the grade of a highway abutting Coca Cola's land as to obstruct the natural flow of water from the land. It was further alleged that due to the grade change Coca Cola's land became subject to recurrent flooding, which caused more than $500,000.00 in damage to the land during a hurricane in 1975.

On May 24, 1977 the lower court entered an order appointing viewers. However, the operation of that order was suspended when, on June 3, 1977, the Department filed preliminary objections to the petition for viewers. The preliminary objections consisted of a demurrer, a motion to strike and an alternative motion for a more specific pleading.

Argument was heard on the preliminary objections on August 24, 1977 before President Judge SHUGHART and Judge RAMBO of the Court of Common Pleas of Cumberland County. On October 26, 1977 that court issued an opinion by Judge RAMBO which decided that Coca Cola's petition sufficiently stated a cause of action for de facto taking but had not sufficiently alleged a case for consequential damages from the grade

change. Companion to that opinion, the lower court entered an order giving Coca Cola leave to amend its petition to state a cause of action for consequential damages under Section 612 to the Code. In that same order the court reserved ruling on the Department's demurrer and motion to strike, because the court deemed the record insufficient at that point to permit a decision. The court stated that there remained factual issues to resolve, and that *it still had to determine whether the case warranted submission to viewers.*

Appellee Coca Cola filed an amended petition on December 5, 1977, expanding its allegations as to consequential damages and adding other allegations going to the de facto claim. The amended petition was duly served on the Department. On December 29, 1977 the Department's counsel sent a letter to the appellee stating that the Department would file no supplemental preliminary objections to the amended petition. In that same letter, the Department took the position that the next procedural step was for the court to reinstate the viewers and to have the viewers commence their proceedings. Indeed, the Department itself represented that it would seek a viewers' proceeding later in the year and present evidence as to damages before the viewers.

Following that letter from the appellant the lower court, on January 24, 1978, entered an order reinstating the board of viewers and their mandate to proceed with their duties according to law. About one week after the viewers were reinstated the Department, by written letter to the board of viewers, requested that the site view be postponed until that spring. However, on May 5, 1978, the Department requested still another delay in the site view. Finally, on June 22, 1978 the Department was advised that the site view would take place on July 26, 1978. The Department acknowledged that letter and stated that it

was ready to proceed. The site view was held on the scheduled date with all parties in attendance.

Several weeks later, on September 18, 1978, the Department filed a motion for the court to conduct an evidentiary hearing on the issue of de facto taking, to establish a record. In that motion the appellant asserted that such a record was necessary in this case, before the court could determine whether a de facto taking had occurred. In response to that motion, Judge SHUGHART on September 18, 1978 ordered that the required evidentiary record be supplied by depositions instead.

Appellee Coca Cola moved to strike that order, asserting that it was granted *ex parte* and constituted a revival of the preliminary objections to the petition for viewers. In that regard, the appellee contended that the Department's preliminary objections to the appointment of viewers had been waived, in light of the order reinstating or reappointing the viewers on January 24, 1978 and the appellant's own actions relative to that order. The appellee further asserted that this waiver of the original preliminary objections also waived the right to contest that a de facto taking had been committed.

With the case in that posture the lower court held an in-chambers conference, and in the process granted the Department leave to file preliminary objections to the amended petition for viewers. On October 19, 1978 the appellant filed its supplemental preliminary objections. Besides challenging the jurisdiction of the lower court, the Department's supplemental preliminary objections did no more than attack the legal sufficiency of Coca Cola's statement of a de facto taking. However, companion to that attack on the facial sufficiency of the petition, the Department for the first time in the proceedings sought to raise a factual allegation: that the appellee's damages were not caused

by the Department but by acts of nature. On October 26, 1978 Coca Cola filed its own preliminary objections to the appellant's supplemental preliminary objections, moving to strike the latter as being untimely.

By an order dated December 15, 1978 the lower court granted Coca Cola's motion to strike the Department's supplemental objections and also dismissed the Department's motion for an evidentiary hearing. In addition, the order directed the board of viewers to proceed with their assignment. It is from that order, of December 15, 1978, that the Department appeals to this Court.

We have held that preliminary objections are the exclusive method under the Eminent Domain Code of raising legal and factual objections to a petition for viewers, where the petitioner alleges a de facto taking. *City of Philadelphia v. Airportels, Inc.,* 14 Pa. Commonwealth Ct. 617, 322 A.2d 727 (1974). Section 504 of the Code expressly mandates that preliminary objections raising issues not previously waived must be filed within twenty days after the receipt of notice that viewers have been appointed. 26 P.S. §1-504.

While it is clear that the Department's initial preliminary objections to Coca Cola's original petition for viewers were timely filed, those objections were not the subject of the order appealed from. What is in issue are the supplemental preliminary objections to the amended petition for viewers. It is one of the curiosities of this case that those supplemental preliminary objections were filed over 10 months after Coca Cola had duly filed and served its amended petition, and almost 10 months after the Department stated that it would file no such supplemental objections.

What is even more critical is that those supplemental preliminary objections came almost 9 months after the Department had been duly notified that the

previously appointed viewers had been re-appointed by court order and directed to proceed with their duties.

Under Section 504 of the Eminent Domain Code, preliminary objections to the appointment of viewers must be filed within 20 days after the objector receives notice that viewers have been appointed. This Court has held that under the Code an objector to the appointment of viewers has two opportunities for filing preliminary objections: within twenty days after notice of the petition for the appointment of viewers or within 20 days after notice of the appointment itself. *Kinstler v. Redevelopment Authority of Philadelphia,* 13 Pa. Commonwealth Ct. 281, 320 A.2d 396 (1974). Thus, while such objections may be filed prior to the appointment, they may not be filed beyond 20 days following notification of the appointment, unless the record fails to reflect due notification of the appointment. *Kinstler, supra.*

Given the 20-day period mandated by Section 504 for filing preliminary objections to the original appointment of viewers, it logically follows that an objector is restricted to an identical time frame for filing supplemental preliminary objections to the re-appointment of viewers, where that re-appointment follows an amended petition for the appointment of viewers. In this case, the Department abandoned its opportunity to respond to the amended petition itself within 20 days after service of that pleading. Therefore, if the Department still wished to file supplemental preliminary objections to the re-appointment of viewers, those objections had to be filed within 20 days after the Department was notified of the re-appointment.

The order re-appointing the viewers was dated January 24, 1978. There is no dispute, and the record clearly reflects, that the chairman of the board of

viewers notified the Department of the re-appointment on February 1, 1978. Since the Department raises no notification issue, it must be concluded that the supplemental preliminary objections filed on October 19, 1978 were grotesquely late. And, that is so whether those objections were aimed at the amended petition itself or the re-appointment that followed it. Accordingly, the order of the lower court, striking those preliminary objections as being untimely, must be affirmed .

We have prescribed the procedure to be followed by a lower court when a petition for viewers alleging a de facto taking is attacked by preliminary objections in the nature of a demurrer. If the court decides that the petition sufficiently states a cause of action for de facto taking, the court must then take evidence to judicially determine whether a de facto taking has been established, before submitting the case to the board of viewers. *Petition of Ramsey,* 20 Pa. Commonwealth Ct. 207, 342 A.2d 124 (1975); *Jacobs v. Nether Providence Township,* 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972). *Accord, Harborcreek Township v. Ring,* 48 Pa. Commonwealth Ct. 542, 410 A.2d 917 (1980); *City of Philadelphia v. Airportels, Inc., supra.*

Based on those principles, the appellant complains that the order appealed from, that of December 15, 1978, was in effect a judicial determination of de facto taking, made without the benefit of record evidence. The reason given for this contention is that the order directed the board of viewers to "proceed with its assignment." Armed with that argument, the appellant is fighting an untimely battle on the wrong front. For, the result of which the appellant now complains occurred long before the appellant even filed its supplemental preliminary objections. It occurred when the lower court entered an order on January 24, 1978, re-

appointing the viewers and directing them to perform their duties.

It could only be clear that the lower court by its order of January 24, 1978 had granted the very relief sought in Coca Cola's petition: the appointment of viewers to assess damages. Coca Cola had secured the appointment of viewers over the Department's original preliminary objections. If it was not clear to the Department at that point, the message must have struck home when the Department was notified on February 1, 1978, that the board of viewers was prepared to schedule a site view, pursuant to the reappointment order.

If the Department objected to the lower court granting the petition and submitting the case to the viewers without having taken record evidence, the Department should have taken an appeal from that order. For, that order could only mean one thing: the Department's original preliminary objections had been overruled.

Since the lower court's order of January 24, 1978 had the clear and direct effect of overruling the Department's preliminary objections to the appointment of viewers, it was a final and appealable order. *Rawls v. Central Bucks Joint School Building Authority*, 8 Pa. Commonwealth Ct. 491, 303 A.2d 863 (1973). Not having appealed from that order, the Department lost its last valid opportunity to contest that a de facto taking had occurred and to contest the submission of the case to the board of viewers. *See In Re Condemnation by City of Philadelphia of Leasehold Interest of Airportels, Inc.*, 40 Pa. Commonwealth Ct. 409, 398 A.2d 224 (1979).

The Department's latter-day challenges to the commencement of viewer's proceedings seems untoward for yet another reason: the Department itself was an active partner in bringing about the very re-

sult it now seeks to avoid. The Department itself, on December 29, 1977, before the court even re-appointed the viewers, wrote to Coca Cola's counsel and stated that the next step in the case was to have the viewers reinstated and viewers' proceedings scheduled. In January and May 1978 the Department wrote to the board of viewers requesting accommodation in the scheduling of the site view. On June 27, 1978 the Department notified the viewers that it was ready for the site view, and on July 26, 1978 participated in the site view proceeding.

As a final thrust, the appellant urges that the board of viewers lacks subject-matter jurisdiction, contending that there was no adjudication by the lower court that a de facto taking had occurred. In light of what we have already declared to be the effect of not appealing from the order of January 24, 1978, re-appointing the viewers and directing them to proceed, there can be no merit in that last contention. In sum, when the lower court, over the Department's preliminary objections, re-appointed the viewers and submitted the case to them, the lower court had adjudged that a de facto taking had occurred. By not appealing from that order, the Department lost the right to contest the issue.

It seems that when the Department filed its supplemental preliminary objections almost 9 months after the viewers had been re-appointed and directed to proceed, the Department was seeking a new device to re-litigate an issue already abandoned. In passing, it can be said that this case has been put through a mangled procedural course. This case has been injected with doses of diversion, delay and confusion that cannot serve the ends of our legal system, be the rights in issue great or small. For the reasons set forth in this opinion, the order of the lower court is affirmed.

## Order

And Now, the 20th day of May, 1980, the order of the Court of Common Pleas of Cumberland County in the above matter, dated December 15, 1978, is hereby affirmed.

President Judge Bowman did not participate in the decision in this case.